UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY E. WOODS, Petitioner, vs. A.K. SCRIBNER,[1/] Respondent. | No. 1:02-cv-05894-JKS<br>MEMORANDUM DECISION |

Randy E. Woods has filed a petition for habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving a term of ten years, consisting of an upper term of seven years, plus a three-year gang enhancement following conviction after trial by jury on a charge of willful and malicious discharge of a firearm at a motor vehicle. CAL. PEN. CODE § 246. Petitioner appealed his conviction to the California Court of Appeal, which affirmed his conviction on February 19, 2002 in an unpublished decision. *People v. Woods*, 2002 WL 244832 (Cal.App. 2002). The California Supreme Court summarily denied review on May 1, 2002. Petitioner did not file a petition for *certiorari* with the U.S. Supreme Court and his conviction became final 90 days later, July 30, 2002. *See Wixom v Washington*, 264 F.3d 894, 897 (9th Cir.2001). Petitioner has not sought post-conviction review in the state courts. The petition for habeas relief was timely filed in this Court on July 18, 2002.

The history of this case and the facts are well known to the parties and are set forth in detail in the opinion of the California Court of Appeal. In the interests of brevity they are not repeated here.

Petitioner raises six claims in his petition. (1) Insufficiency of the evidence to support his conviction. (2) Expert witness testimony relating to the behavior of street gangs was erroneously presented to the jury. (3) Right to a fair and unbiased jury was violated when one juror reported

---

[1/] A.K. Scribner is substituted for Edward S. Alameida, Jr. as warden of the California State Prison, Corcoran. FED. R. CIV. P. 25(c).

seeing the "victim's" vehicle. (4) The failure to include a lesser included offense instruction to the jury. (5) The prosecution improperly peremptorily excused the only African-American panelist from the jury. (6) The jury was improperly instructed using CALJIC 17.41.1 ("any juror refuses to deliberate or expresses an intention to disregard the law or decide the case based on penalty or punishment or any other improper basis, it is the obligation of the other jurors to immediately advise the court of the situation").

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (explaining this standard). In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal. In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

<u>Claim 1 (Sufficiency of the Evidence)</u>.

On direct appeal, Petitioner attacked the sufficiency of the evidence. The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). This court must, therefore, determine whether the California Court of Appeal unreasonably applied *Jackson* in upholding Petitioner's conviction in this case. In making this determination, it is irrelevant whether the state court cites the Supreme Court precedents, or is even aware of them; the standard is met "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

In rejecting this claim, the California Court of Appeal held:

Count 1

Woods makes a similar argument to that of McGill, claiming there was insufficient evidence to find he was an "active participant" in a street gang. As with McGill, Woods's claim fails as there is sufficient evidence to find him an active gang member.

Officer Jehle testified he had known Woods for more than three years and had spoken with him more than 50 times about various subjects, including street gang activities. Woods told Officer Jehle at least 10 times he was an East Side Stroller Boy Crip, a subset of the East Side Crip street gang. At one point, Woods had been a member of the Country Boy Crip street gang, but had changed his affiliation when his brother was killed by a Country Boy Crip member.

Officer Jehle reviewed police reports which included information about Woods. In June of 1995, Woods was in a vehicle with other East Side Crip gang members when it drove into a bicycle ridden by a West Side Crip member. Prior to hitting the victim, an occupant of the vehicle flashed an East Side Crip gang sign. In January 1996, Woods admitted being in the area of a shooting, selling rock cocaine. Officer Jehle testified street gangs often finance their activities through drug sales.

In July 1996, Woods was determined to have been at an address known as an East Side Crip hangout. In September 1996, Woods was with another gang member who forcibly stole a bicycle from an individual. During the investigation of the killing of a Bloods gang member in February 1997, Woods stated during questioning that he had accompanied other East Side Crip gang members to a residence where he held the door of the vehicle open while other gang members shot and killed the victim.

A field interview card from October 1997 showed Woods had been in the company of known East Side Crip gang members in gang territory. Similarly, in January of 1998, a field interview card showed Woods to have been in a known gang area. In July 1998, another known gang member told police Woods frequented the gang territory and sold cocaine. In August 1998, Woods was a suspect in a drive-by shooting of a female victim in the Country Boy Crip area. Also that month, Woods told a police officer he was a Stroller Boy Crip and had been for three years.

In November of 1998, Woods was in a stolen vehicle with two other East Side Crip gang members. Also that month, Woods was seen in the company of two known gang members in gang territory. Additionally, during the course of the trial, Woods wore East Side Crip gang colors, dark or navy blue.

Again, a reasonable trier of fact could find this evidence more than a mere coincidence. Rather, this evidence created belief beyond a reasonable doubt that

Woods's participation in the East Side Crips at the time of the current offense was more than passive or nominal. Substantial evidence supports Woods's conviction on count 1 (§ 186.22, subd. (a)) because a reasonable trier of fact could find Woods was an active participant in a street gang at the time he committed the current crimes.

Counts 2 and 3

Woods makes an argument similar to McGill's, that there was insufficient evidence to support his conviction for counts 2 and 3. According to Woods, there is no evidence that any shots were fired *at* an occupied motor vehicle, but that, at most, the evidence was consistent with the firing of a gun into the air. Woods claims no witness stated shots were fired at the gray car.

However, the evidence shows that a number of gunshots were fired in rapid succession while the green van chased the smaller gray car. Officer Ramos also found it significant that the occupants of the vehicle being pursued and fired at never notified the police of the incident. This led to an inference that the occupants of that vehicle were rival gang members.

If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People v. Redmond, supra*, 71 Cal.2d at p. 755, 79 Cal.Rptr. 529, 457 P.2d 321.) Incorporating our analysis, *ante*, in connection with McGill's claim of insufficiency of evidence on counts 2 and 3, we also find here that sufficient evidence existed to find Woods guilty on those counts as well.

[In its incorporated analysis, the Court of Appeal stated:

> [McGill next contends there was no evidence he was either the perpetrator or an aider or abettor in the commission of counts 2 and 3: discharging a firearm at an occupied vehicle (§ 246), and assault with a firearm (§ 245, subd. (a)(2)). In essence, McGill argues that neither his presence at the scene nor his knowledge of the crime and failure to prevent it was sufficient to establish his liability as an aider and abettor.
>
> [The prosecution argued McGill aided and abetted on the alleged charges. To be liable as an aider and abettor, the defendant must have acted with knowledge of the perpetrator's unlawful purpose and with the intent either to commit, or to encourage or facilitate the perpetrator's commission of, the offense. (*People v. Beeman* (1984) 35 Cal.3d 547, 560, 199 Cal.Rptr. 60, 674 P.2d 1318.) “Whether a defendant aided and abetted a crime is a question of fact.” (*People v. Glenos* (1992) 7 Cal.App.4th 1201, 1208, 10 Cal.Rptr.2d 363.) Since direct evidence of the defendant's mental state is rarely available, the trier of fact must be free to disbelieve

the defendant's testimony and, based on all the facts and circumstances disclosed by the evidence, to infer that the truth is otherwise. ( *People v. Beeman, supra,* at pp. 558-559, 199 Cal.Rptr. 60, 674 P.2d 1318; *People v.. Kwok* (1998) 63 Cal.App.4th 1236, 1245, 75 Cal.Rptr.2d 40.) On appeal, such inferences, along with any conflicts in the evidence, must be resolved in favor of the judgment. ( *People v. Glenos, supra,* at p. 1208, 10 Cal.Rptr.2d 363.) Thus, a judgment of conviction cannot be set aside for insufficiency of the evidence unless it clearly appears that upon no hypothesis whatever is there sufficient evidence to support it. (*People v. Kwok, supra,* at p. 1245, 75 Cal.Rptr.2d 40.)

[McGill relies upon *People v. Luna* (1956) 140 Cal.App.2d 662, 664, 295 P.2d 457, for the proposition that "one who merely stands by, watching an assault and even approving of it is not aiding and abetting," but merely a bystander. Here, however, viewing the record in the light most favorable to the prosecution, the evidence is sufficient to show McGill aided and abetted in the discharge of a firearm at an occupied vehicle and committed assault with a firearm.

[Helpful to our analysis is *People v. Manriquez* (1999) 72 Cal.App.4th 1486, 86 Cal.Rptr.2d 69 in which the defendant, a gang member, was found guilty of aiding and abetting first degree murder, attempted murder and personally using a firearm. (*Id.* at p. 1488, 86 Cal.Rptr.2d 69.) The defendant was one of two occupants in a vehicle that drove by a taco stand yelling gang slang and displaying a handgun. The vehicle reappeared minutes later, followed by another vehicle. Shots were fired from both vehicles. The shots from the second car killed a victim. The shots fired by the defendant did not strike anyone. (*Id.* at p. 1489, 86 Cal.Rptr.2d 69.)

[In *Manriquez,* the defendant admitted hanging out with gang members but denied being a gang member. The defendant also admitted knowing about the gang rivalry involved, and earlier that day, members of the other gang had pelted him with bottles. According to a gang expert, the shooting fit the classic pattern of a gang-related, drive-by shooting. (*People v. Manriquez, supra,* 72 Cal.App.4th at p. 1490, 86 Cal.Rptr.2d 69.)

[Despite the defendant's argument that he was in the wrong place at the wrong time, and that he did not know what his friends were planning on doing, the trial court found the defendant guilty of

aiding and abetting in the murder. The court in *Manriquez,* relying on the evidence of the events leading up to and surrounding the shooting, supported the conclusion that the defendant aided and abetted in the murder. (*People v. Manriquez, supra,* 72 Cal.App.4th at p. 1491, 86 Cal.Rptr.2d 69.)

[Here, evidence showed McGill and five fellow gang members had earlier in the evening been at Sharky's, a gang hangout. McGill and the fellow gang members got into the green van together. They were chasing the occupants of a gray vehicle and someone in the van was shooting at the gray vehicle. Numerous shots were heard, fired in rapid succession. The shots appeared to come from the vehicle doing the chasing. The officers on the scene thought the bullets were striking near to where they were located. Cartridge shells were found on the pavement. Those matched the round left in the gun when it was recovered from the green van. When the police officers attempted to stop the green van, it drove recklessly and attempted to elude the police.

[McGill's gang affiliation was real and immediate. Expert testimony showed that gang members normally travel with a minimum of three gang members for safety. An individual's status is enhanced in a gang by committing a violent crime in the presence of other gang members. Having a minimum of three gang members together confuses the issue of culpability for the police. It also encourages the actual perpetrator to commit the target offense. Officer Jehle testified that when a gang member has a gun in the presence of other gang members, that presence is known to the group. A gun is a symbol of power, but usually only one gun is carried to make it difficult for police to prove who carried the gun. Officer Jehle testified that any one of the gang members might be expected to use the gun to further gang objectives. Officer Ramos testified that the act of getting into a vehicle in which there is a firearm is an act in furtherance of the gang. The gang members are a support system for each other in the perpetration of offenses. Proof of the aider and abettor's intent may be made by way of an inference from his volitional acts with knowledge of their probable consequences. From a person's action with knowledge of the purpose of the perpetrator of a crime, his intent to aid the perpetrator can be inferred. In the absence of evidence to the contrary, the intent may be regarded as established. (*People v. Beeman, supra,* 35 Cal.3d at pp. 558, 559-560, 199 Cal.Rptr. 60, 674 P.2d 1318.)

> [Sufficient evidence exists to find McGill aided and abetted in the discharge of a firearm at an occupied vehicle and aided and abetted in committing an assault with a firearm.]

Count 4

Woods makes an argument similar to that made by McGill, i.e., he cannot be found guilty of count 4 as there was no evidence he was carrying a loaded firearm in a vehicle. Our previous analysis as applied to McGill applies here as well. In addition, it should be noted that the circumstantial evidence is even greater that Woods had possession and control, either actual or constructive, over the firearm than McGill or Kent did. Woods was seated in the front passenger seat of the van. Only the front windows of the van rolled up and down, the others opened slightly on a hinge. The bullets heard by the police officers were fired from the passenger side of the van. When the gun was thrown from the van, it came from the passenger side of the vehicle.

There was sufficient evidence to find Woods had possession and control over the loaded firearm in the vehicle.

Count 6

Woods makes an argument similar to that made by McGill, i.e., he cannot be found guilty of conspiracy on the facts. In particular, Woods highlights *Mitchell v. Prunty* (9th Cir.1997) 107 F.3d 1337, overruled on other grounds *in Santamaria v. Horsley* (9th Cir.1998) 133 F.3d 1242, 1248, and *U.S. v. Garcia* (9th Cir.1998) 151 F.3d 1243 for the proposition that the evidence here was insufficient to support the jury's determination that he and the other codefendants conspired to commit the alleged offenses. Both cases are inapposite. *Mitchell v. Prunty, supra,* found that membership in a gang, in and of itself, was not proof of intent needed to establish aiding and abetting. In *Mitchell,* the defendant had been found guilty of aiding and abetting a murder by "fanning the fires of gang warfare," which the court thought "smack [ed] of guilt by association." (*Mitchell v. Prunty, supra,* at p. 1342.) In *U.S. v. Garcia, supra,* the issue was whether testimony regarding the existence of an implicit agreement among gang members to support one another in fights against rival gangs can constitute sufficient evidence to support a conviction of conspiracy to commit assault when the conduct was otherwise insufficient. (*U.S. v. Garcia, supra,* at p. 1244.)

Here, the evidence supports the jury's findings that all of the overt acts alleged in connection with the conspiracy were true. The inference drawn by the jury that Woods was part of a conspiracy to commit these violations was entirely reasonable, given the overt acts proved. Expert testimony was given that all of the coconspirators had been at Sharky's where gang fights occurred. After Sharky's closed, the coconspirators all got into the green van. It was reasonable to infer that each of them knew the handgun was in the van. It is also reasonable to infer that

> being in the van with each other was a tacit agreement among the coconspirators that the handgun was going to be used to assault rival gang members. It was not unreasonable for the jury to be persuaded beyond a reasonable doubt Woods was part of this conspiracy.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n. 16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir.2005).

In the case at bar, the California Court of Appeal determined that the evidence was sufficient to establish the necessary elements of the crimes as defined by California statutes and applied by the California courts. This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief under Claim 1.

Claim 2 (Admission of Expert Testimony).

In rejecting Petitioner's claim that the police officers should not have been permitted to testify as to characteristics of gangs and gang members, the California Court of Appeal held:

> Expert testimony is admissible only if the subject matter of the testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid.Code, § 801, subd. (a).) "The subject matter of the culture and habits of criminal street gangs .... meets this criteria." (*People v. Gardeley*, *supra*, 14 Cal.4th at p. 617, 59 Cal.Rptr.2d 356, 927 P.2d 713.) "The use of expert testimony in the area of gang sociology and psychology is well established." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1370, 37 Cal.Rptr.2d 596.) "[W]e have without question permitted police to provide expert testimony

regarding gangs." (*People v. Williams* (1997) 16 Cal.4th 153, 196, 66 Cal.Rptr.2d 123, 940 P.2d 710.) "Expert testimony may also be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions." *People v. Gardeley, supra,* 14 Cal.4th at p. 618, 59 Cal.Rptr.2d 356, 927 P.2d 713; see also Evid.Code, § 801, subd. (b).)

Generally, an expert may render opinion testimony on the basis of facts given "in a hypothetical question that asks the expert to assume their truth." (1 McCormick on Evidence (4th ed.1992) § 14, p. 58.) Such a hypothetical question must be rooted in facts shown by the evidence, however. (*People v. Gardeley, supra,* 14 Cal.4th at p. 618, 59 Cal.Rptr.2d 356, 927 P.2d 713.)

Prior to trial, defense counsel argued there was insufficient evidence under Evidence Code section 801 for the officers to conclude the shooting was in furtherance of a criminal street gang as alleged in section 186.22, subdivision (b), the gang enhancement. Defense counsel argued that the officers, in forming their opinions, relied on assumptions of facts that were neither based on their personal knowledge nor on the evidence of the case. According to defense counsel, "[H]ere the officers were testifying based on assumptions of which they had no facts to support those assumptions and no personal knowledge." For instance, according to defense counsel, the officer assumed the gray car had been at Sharky's, the occupant of the gray car was a rival gang member, and the occupants of the green van were shooting at the gray car.

The trial court heard extensive argument by counsel. After reading *People v. Gardeley, supra,* 14 Cal.4th 605, 59 Cal.Rptr.2d 356, 927 P.2d 713, the trial court determined there was a basis for the officers' opinions, and denied the motion.

At trial, after giving Officer Ramos a "hypothetical" based on the facts of this case, the prosecutor asked Officer Ramos if in his opinion the shooting was done in furtherance of a criminal street gang and why. Officer Ramos responded that he thought it was, explaining that he based his opinion on the fact that the occupants of the van were gang members, that at least two of them were coming from Sharky's where fights had broken out between East Side and West Side Crips, that the van was shooting at the car, and that the members of the car did not report the incident, making it likely that they were gang members as well. He then opined that based on the fact that gang members provide a support system for each other, each gang member in the car played a role in the crime. Appellants contend the basis of this hypothetical was nothing but conjecture. We disagree.

Evidence Code section 801 limits expert opinion testimony to an opinion that is "[b]ased on matter .... perceived by or personally known to the witness or made known to [the witness] at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [the expert] testimony relates. ...." (*Id.,* subd. (b).)

> As laid out in detail above, in both the statement of the facts and in our analysis of the sufficiency of the evidence, the evidence showed that Kent and Woods both told the police they had been at Sharky's earlier in the evening in question. McGill's witnesses testified they had been with McGill at Sharky's that same evening and left him there when fights broke out. Substantial evidence was presented that all six occupants of the van were East Side Crip members. Evidence was presented by Officers Kennemer and Farnsworth, and witness Pederson in the hotel room, that the occupants of the van were chasing the small gray car and shooting at the car. Although Officers Ramos and Jehle did not have personal knowledge of these facts, such personal knowledge is not required as long as the hypothetical question was supported by facts in evidence. (*People v. Gardeley*, *supra*, 14 Cal.4th at p. 618, 59 Cal.Rptr.2d 356, 927 P.2d 713.)
>
> The trial court did not err in admitting the expert testimony pursuant to Evidence Code section 801, subdivision (b).

In his petition for review to the California Supreme Court, as in his brief before the California Court of Appeal, Petitioner argued only admissibility of the testimony of the expert under state law.[2] Petitioner did not fully and clearly raise the issue of the Fifth, Sixth, or Fourteenth Amendments before the state courts. Petitioner cited two federal cases to the California court,[3] neither of which are apposite as both were decided on federal evidentiary grounds, not federal constitutional principles. The same is true of the California cases cited by Petitioner on his California appeal.

Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995). A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim. *See* 28 U.S.C. § 2254(e); *Weaver v. Thompson,* 197 F.3d 359, 364 (9th Cir.1999). A petitioner must alert the state courts to the fact that he is

---

[2] In his brief before the California Court of Appeal Petitioner did allude to a violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and to the Fourteenth Amendment in his petition for Review in the California Supreme Court. However, his argument before both California courts was directed solely on evidentiary, not constitutional, grounds.

[3] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Mitchell v. Prunty,* 107 F.3d 1337 (9th Cir.1997).

asserting a federal claim in order to fairly present the legal basis of the claim. *Duncan,* 513 U.S. at 365-66. In the Ninth Circuit, a petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal Constitution or statutes, or citing to federal case law. *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir.2000). Mere similarity of claims between a state law claim and a federal law claim is insufficient for exhaustion purposes. *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir.1996). In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to relief. *Gray*, 518 U.S. at 162–163. A petitioner who cites one clause of a constitutional amendment does not exhaust a claim under a different clause of the same constitutional amendment. *Picard*, 404 U.S. at 276–277. If a petitioner cites a state case that analyzes a federal constitutional issue, that federal issue is fairly presented. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.2002). The required level of explicitness is the same for *pro se* petitioners and petitioners who are represented by counsel. *Lyons*, 232 F.3d at 667.

Petitioner in this case failed to exhaust the federal constitutional issues raised in Claim 2. However, a Respondent may waive the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(3) ("A state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance on the requirement unless the state, through counsel, expressly waives the requirement"). In ¶ VII of the answer to the petition, Respondent affirmatively alleged "Petitioner has exhausted his state court remedies as to the claims raised in the instant petition." It can hardly be said that this does not constitute an express waiver by counsel of the exhaustion requirement. *See Dorsey v. Chapman*, 262 F.3d 1181, 1187 (11th Cir.2001). Generally, a habeas court may, in its discretion, reach the merits of a habeas claim or may insist on exhaustion of state remedies despite a State's waiver of the defense. *See Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir.1997). The court's discretion should be exercised to further the interests of comity, federalism, and judicial efficiency. *See, id*. Since Respondent also addresses Petitioner's claims on the merits in the answer, it appears to be in the interests of the parties and judicial efficiency without unduly offending the interests of either comity or federalism for the court to decide Claim 2 on the merits.

The Court can find no constitutional error in the admission of the testimony of Officer Ramos. The testimony was based on the experience of the officer, not, as contended by Petitioner, "junk science." The evidence was certainly relevant to the issue of Petitioner's involvement in the shooting and the hypothetical was based upon either facts in evidence or reasonable inferences to be drawn from those facts. *See Windham v. Merkle,* 163 F.2d 1092, 1103 (9th Cir.1998). This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief under Claim 2.

Claim 3 (Unbiased Jury).

The California Court of Appeal in rejecting his claim that a juror who observed what the juror thought to be the victim's car should have been removed from the jury panel, held:

> In the second instance, later during the trial, the same juror reported to the trial court that he had seen a car he thought matched the description of the "victim's" car in the case. The rear window of the small blue or gray car had been shot out and there were holes in the vehicle. The juror noted the license number. The trial court questioned the juror, who stated the observation of the car was not evidence he would consider in the trial. The juror also stated he had not shared this information with any other juror. The juror stated there appeared to be one occupant in the car, but he could discern no identifying features. He also stated the information would in no way influence his opinion in the case.
>
> Appellants made a second motion to remove the juror for cause. The prosecutor noted that the juror had not violated the court's order not to do any investigation, but that the juror was just driving along the street when he saw the car. The court stated that while neither of these situations gave rise to a challenge for cause, the trial court was "somewhat concerned." The court then denied the motion.
>
> A defendant accused of a crime has a constitutional right to a trial by unbiased, impartial jurors. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 16; *Irvin v. Dowd* (1961) 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751; *In re*

*Hitchings* (1993) 6 Cal.4th 97, 110, 24 Cal.Rptr.2d 74, 860 P.2d 466.) A defendant is “entitled to be tried by 12, not 11, impartial and unprejudiced jurors. ‘Because a defendant charged with crime has a right to the unanimous verdict of 12 impartial jurors [citation], it is settled that a conviction cannot stand if even a single juror has been improperly influenced.’ [Citations.]” (*People v. Holloway* (1990) 50 Cal.3d 1098, 1112, 269 Cal.Rptr. 530, 790 P.2d 1327, disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1, 38 Cal.Rptr.2d 394, 889 P.2d 588.)

Juror misconduct, such as the receipt of information about a party or the case that was not part of the evidence received at trial, leads to a presumption that the defendant was prejudiced and may establish juror bias. (*People v. Marshall* (1990) 50 Cal.3d 907, 949-951, 269 Cal.Rptr. 269, 790 P.2d 676; *In re Carpenter* (1995) 9 Cal.4th 634, 650-655, 38 Cal.Rptr.2d 665, 889 P.2d 985.) If the prosecution does not rebut that presumption, the defendant is entitled to a new trial. (*In re Stankewitz* (1985) 40 Cal.3d 391, 402, 220 Cal.Rptr. 382, 708 P.2d 1260.)

“The presumption of prejudice ‘may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine there is a reasonable probability of actual harm to the complaining party. ....’ [Citation.] Whether a defendant has been prejudiced .... depends upon ‘whether the jury's impartiality has been adversely affected, whether the prosecution's burden of proof has been lightened and whether any asserted defense has been contradicted.’” (*People v. Miranda* (1987) 44 Cal.3d 57, 117, 241 Cal.Rptr. 594, 744 P.2d 1127.)

When misconduct does not support a finding that there is a substantial likelihood at least one juror was impermissibly influenced to the defendant's detriment, misconduct is not prejudicial. (*In re Malone* (1996) 12 Cal.4th 935, 964, 50 Cal.Rptr.2d 281, 911 P.2d 468.)

Our Supreme Court in *People v. Nesler* (1997) 16 Cal.4th 561, 66 Cal.Rptr.2d 454, 941 P.2d 87 explained:

“We assess the effect of out-of-court information upon the jury in the following manner. When juror misconduct involves the receipt of information about a party or the case from extraneous sources, the verdict will be set aside only if there appears a substantial likelihood of juror bias. [Citation.] Such bias may appear in either of two ways: (1) if the extraneous material, judged objectively, is so prejudicial in and of itself that it is inherently and substantially likely to have influenced a juror; or (2) even if the information is not ‘inherently’ prejudicial, if, from the nature of the misconduct and the surrounding circumstances, the court determines that it is substantially likely a juror was ‘actually biased’ against the defendant. If we find a substantial likelihood that a juror was actually biased, we must set aside the verdict, no matter how convinced we might be that an unbiased

jury would have reached the same verdict, because a biased adjudicator is one of the few structural trial defects that compel reversal without application of a harmless error standard. [Citation.]" (*Id.* at pp. 578-579, 66 Cal.Rptr.2d 454, 941 P.2d 87.)

In *People v. Nesler, supra,* during the sanity phase of the trial, a juror engaged in misconduct by sitting in a bar while a woman revealed damaging information about the defendant for half an hour. The juror did not identify herself as a juror and did not leave. She did not disclose the outside information or its source to the trial court. Instead, the juror violated her oath and disregarded the trial court's instructions by revealing the information to the other jurors. She used this information during deliberations to persuade the other jurors to change their views. (*People v. Nesler, supra,* 16 Cal.4th at p. 579, 66 Cal.Rptr.2d 454, 941 P.2d 87.) Our Supreme Court in *Nesler* found the juror was actually biased and the presumption of prejudice which arose from her misconduct was not rebutted. (*Id.* at p. 589, 66 Cal.Rptr.2d 454, 941 P.2d 87.)

In contrast, in *In re Carpenter, supra,* 9 Cal.4th 634, 38 Cal.Rptr.2d 665, 889 P.2d 985, our Supreme Court considered whether a juror was biased after she learned during trial that the defendant previously had been convicted and sentenced to death in a related case. The juror did not inform the trial court what she had learned and she told nonjurors about it. The court found no substantial likelihood the juror was biased, finding that the juror's failure to report her knowledge was only "passive" misconduct; telling nonjurors did not itself prejudice the defendant; the juror did not suggest to nonjurors that she would consider this information in reaching her verdict; and there was no evidence the juror told any fellow jurors what she had learned. (*Id.* at pp. 656-657, 38 Cal.Rptr.2d 665, 889 P.2d 985.) The court found that nothing about the juror's conduct indicated she had failed to base her verdict on anything other than the evidence. (*Id.* at p. 656, 38 Cal.Rptr.2d 665, 889 P.2d 985.)

Here, the situation is more akin to that in In re Carpenter than in *People v. Nesler.* The out-of-court information here-the juror's sudden discovery that one of the children he coached was the son of a deputy district attorney not connected with the current case, and a car he saw might have matched the description of a vehicle discussed at trial-does not appear to be information so prejudicial "that it is inherently and substantially likely to have influenced a juror." (*People v. Nesler, supra,* 16 Cal.4th at pp. 578-579, 66 Cal.Rptr.2d 454, 941 P.2d 87.)

Neither can it be said from the information and the surrounding circumstances that the juror was "actually biased" against appellants. The juror revealed both pieces of information to the trial court as soon as he became aware of them. The juror did not reveal this information to any other juror. He also stated he had not formed an opinion as to the guilt or innocence of appellants and that this information did not affect his ability to be fair and impartial.

> The conclusion of a trial judge on the question of individual juror bias and prejudice is entitled to great deference and requires reversal on appeal only upon a clear showing of abuse of discretion. (*People v. Price* (1991) 1 Cal.4th 324, 400, 3 Cal.Rptr.2d 106, 821 P.2d 610; *People v. Caldwell* (1980) 102 Cal.App.3d 461, 473-475, 162 Cal.Rptr. 397.) When, as here, a juror affirms "a willingness and ability to act impartially in weighing the evidence and applying the law upon which he will be instructed, there must be facts which clearly show the juror's bias to warrant a reversal of the trial judge's decision not to excuse that juror. ....“ (*People v. Caldwell*, *supra*, at p. 473, 162 Cal.Rptr. 397.) Appellants have made no such showing.

Petitioner correctly argues that the Sixth Amendment guarantees a criminal defendant a trial before jury capable and willing to decide the case solely on the basis of the evidence before it. *Fields v. Brown*, 431 F.3d 1186 (9th Cir.2005). Petitioner is also correct that a defendant is denied the right to a fair trial if only one juror is biased or prejudiced. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir.1998). However, that standing alone does not obtain the result Petitioner seeks in this case. Whether a juror is biased is a question of fact; consequently, the trial court's finding on this question is entitled to a presumption of correctness. *Casey v. Moore*, 386 F.3d 896 (9th Cir.2004). In the case at bar Petitioner has failed to overcome that presumption. The trial judge, as well as the juror involved, proceeded carefully and cautiously. There is nothing in the record that would indicate the trial judge erred in refusing to disqualify the juror or that the Court of Appeal erred in upholding the trial court's decision. Both applied the appropriate standards. This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief under Claim 3.

Claim 4 (Lesser Included Offense Instruction).

Petitioner's claim is foreclosed by the rule in this circuit that "the failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir.1984); *see Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir.2000); *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir.1995) *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir.1999) (en banc). Petitioner having failed to present a substantial federal constitutional issue, he is not entitled to relief under Claim 4.

Claim 5 (Peremptory Challenge of African American Juror).

In rejecting Petitioner's claim that it was error for the prosecutor to peremptorily challenge the only African American on the jury panel, the California Court of Appeal held:

> During jury selection, counsel for Woods made a *Wheeler*[FN5] motion based on the prosecutor's use of a peremptory challenge to an African American juror. Counsel for Kent and McGill joined in the motion. Appellants are African American. Appellants now claim the court's denial of the motion was erroneous.
>
> FN5. *People v. Wheeler* (1978) 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748.
>
> The record
>
> The record shows that after counsel made the *Wheeler* motion, the trial court ruled that a prima face showing had been established. When the trial court asked the prosecutor about the juror in question, he stated:
>
> "[The juror], I believe, was probably the most scared juror I have seen in recent memory. By the time the third defense lawyer talked to her, I don't think she was answering audibly. She was very uncomfortable. She crossed her arms, and she kept rolling her eyes and looking away from the forum here as if she had absolutely no desire to be a part of this case, and she was extremely uncomfortable, in my opinion, being in the jury box."
>
> Two of the defense counsel countered that they did not think the juror seemed frightened and that her occupation as a customer service manager was one in which she would have a great deal of contact with the public.
>
> The trial court acknowledged that while there were other African Americans in the audience, this particular juror was the only African American drawn and put into the panel. The trial court then went on to state that while the juror had an occupation in which she should have been making eye contact, she did not do so. The trial court stated:

"There was something that was disturbing her .... because when I asked her questions, she .... wasn't willing to make eye contact with me. And I noted the same thing as counsel. And because of her occupation, it leads me to believe that it wasn't just a question of .... feeling uncomfortable around people because here's a lady who works in customer relations. I'll tell you, there's probably no worse job than that because you deal with a lot of irate people that are dissatisfied with your company's service or products or whatever it may be. You deal with some pretty tough people, and you usually have to be a people-type person to do that. And here she is in this courtroom, and it's apparent that she's not willing to make that eye contact. She feels-she's obviously-something is upsetting her."

The trial court then denied appellants' *Wheeler* motion, stating it was satisfied counsel had not excluded the juror based on ethnicity. The trial court further reiterated that the prosecutor's observations had been the court's observations as well.

Applicable law

The California Constitution forbids the use of peremptory challenges to discriminate against members of a cognizable racial or ethnic group. (*People v. Wheeler, supra,* 22 Cal.3d at pp. 276-277, 148 Cal.Rptr. 890, 583 P.2d 748.) The federal Constitution proscribes discriminatory challenges on the basis of race. (*Batson v. Kentucky* (1986) 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69.) A party who suspects improper use of peremptory challenges must object in timely fashion and make a prima facie showing of strong likelihood that the opponent has excluded one or more jurors on the basis of race or group identity. (*People v. Montiel* (1993) 5 Cal.4th 877, 909, 21 Cal.Rptr.2d 705, 855 P.2d 1277.)

If the trial court finds a prima facie case, the burden shifts to the opponent to show genuine nondiscriminatory reasons for the challenges at issue. (*People v. Arias* (1996) 13 Cal.4th 92, 135, 51 Cal.Rptr.2d 770, 913 P.2d 980; *People v. Montiel, supra,* 5 Cal.4th at p. 909, 21 Cal.Rptr.2d 705, 855 P.2d 1277.) The justification need not support a challenge for cause; even "trivial" reasons, if genuine and neutral, will suffice. (*People v. Montiel, supra,* at p. 910, fn. 9, 21 Cal.Rptr.2d 705, 855 P.2d 1277.) Once the prosecutor has stated his or her reasons supporting the exercise of the questioned peremptory challenge, the court evaluates the prosecutor's explanation in order to determine whether the stated reasons are genuine. (*People v. Fuentes* (1991) 54 Cal.3d 707, 715, 718, 286 Cal.Rptr. 792, 818 P.2d 75.) If the court makes a "sincere and reasoned effort" to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal. We do not reassess good faith by conducting our own comparative juror analysis. Subsequent analysis undermines the trial court's credibility determinations and discounts the variety of subjective factors and considerations, including prospective jurors' body language or manner of answering questions, which legitimately play into a trial lawyer's decision to

> exercise peremptory challenges. (*People v. Montiel, supra,* at p. 909, 21 Cal.Rptr.2d 705, 855 P.2d 1277.)
>
> Appellants now contend the prosecutor's reasons for excluding the African American juror were pretextual, and that the exclusion was in fact primarily group bias. Specifically, appellants claim the prosecutor's reasons of body language and eye contact were "sham reasons" and that the trial court did not engage in a sincere and reasoned attempt to evaluate the prosecutor's reasons for dismissing the juror.
>
> However, as evidenced by the record, the trial court did make a "sincere and reasoned effort" to evaluate the nondiscriminatory justification offered by the prosecution. As such, the trial court's conclusions are entitled to deference on appeal. (*People v. Montiel, supra,* 5 Cal.4th at p. 909, 21 Cal.Rptr.2d 705, 855 P.2d 1277.) The trial court did not abuse its discretion in denying appellants' motion.
>
> McGill raises one additional issue in regard to the *Wheeler* motion. He asserts that if the People argue he has waived his federal constitutional right to equal protection under *Batson v. Kentucky, supra,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 because his counsel did not raise such a claim at trial, defense counsel was then ineffective. We need not address this issue, however, in light of the fact that appellants' *Wheeler* motion was properly denied.

In this case the California Court of Appeal applied the California equivalent of the federal constitutional requirements. While the deferential standard under AEDPA "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), and that the Petitioner must rebut the "presumption of correctness by clear and convincing evidence," § 2245(e)(1), is demanding, it is not insurmountable. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). In a recent decision, the Ninth Circuit made clear that the prosecutor's non-discriminatory explanation need not be taken at face value but must be examined in light of the record as a whole and "[a]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Kesser v. Cambra*, 465 F.2d 351, 359 (9th Cir.2006) (en banc) (internal quotation marks and citations omitted).

In the case at bar, the explanation given does not exhibit an inherent discriminatory intent; it must therefore be deemed race neutral. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). Petitioner points to no facts in the record, other than the peremptory challenge of the sole African-American on the panel, to support his claim of racial discrimination and an independent review of the record by the Court does not reveal any such evidence. This is, in itself,

insufficient to show that the prosecutor's racially neutral explanation was either a sham or pretext. *See Wade v. Terhune*, 202 F.3d 1190, 1198 (9th Cir.2000). "[Th]e ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem, supra*. There is no evidence in the record that the prosecutor failed to peremptorily excuse a Caucasian juror where similar circumstances or reason existed, or any indication that the prosecutor exhibited any bias, prejudice or animosity towards African-Americans, or that the prosecutor had a history of excluding African-Americans from juries, shuffling of juries to place white ahead of black jurors, or disparately questioned black and while jurors. *See Miller-El*, 545 U.S. at 241–242. The record before this Court does not show that the decision of the California Court of Appeal was contrary to the principles of *Batson–Miller-El–Kesser*. Consequently, this Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief under Claim 5.

Claim 6 (Error in giving CALJIC 17.41.1).

Review of the propriety of giving CALJIC 17.41.1 by this Court is foreclosed by *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir.2004) (affirming district court's denial because there is no clearly established federal law holding that CALJIC 17.41.1 violates an existing constitutional right). Thus, having failed to present a federal constitutional issue, Petitioner is not entitled to relief under Claim 6.

Petitioner not being entitled to relief under any claim presented in the petition,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)). All federal constitutional issues properly raised in the petition were addressed by the California Court of Appeal in its decision and no reasonable jurist could find that its decision was "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated: March 21, 2007.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge